# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEWIS F. DRAPER, a Florida resident, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| EDWARD I. PICKUS, ALLAN M. PICKUS, ) | |
| NATHAN W. PICKUS, JEFFREY PICKUS, ) | |
| JAMES PICKUS, JOEL PICKUS, ) | No. 04 C 8150 |
| THEODORE PICKUS and JOHN FOSSBERG, ) | Judge Joan H. Lefkow |
| Illinois residents, individually and doing ) | |
| business as EAN CORPORATION, an Illinois ) | |
| corporation, BASE 4, INC., an Illinois ) | |
| corporation, and/or JMJ CONSTRUCTION ) | |
| CO., an Illinois corporation, ROBERT A. ) | |
| WITUCKI, an Illinois resident, and EVOY, ) | |
| KAMSCHULTE, JACOBS and Co., a certified ) | |
| public accounting firm, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lewis F. Draper ("Draper") filed the instant action against defendants Edward I. Pickus, Allan M. Pickus, Nathan W. Pickus, both individually and doing business as EAN Corporation ("EAN"), Jeffrey Pickus, James Pickus, Joel Pickus, and Theodore Pickus, both individually and doing business as Base 4, Inc. ("Base 4"), John Fossberg ("Fossberg"), JMJ Construction Co. ("JMJ"), Robert A. Witucki ("Witucki"), and Evoy, Kamschulte, Jacobs and Co. ("EKJ") alleging state law claims for breach of contract (count I) and breach of fiduciary duty (count II), as well as a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* Defendants have filed motions to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P., failure to state a claim upon which

relief may be granted under Rule 12(b)(6), Fed. R. Civ. P., and failure to satisfy the pleading requirements of Rule 9(b), Fed. R. Civ. P. For the reasons stated below, defendants' motions are granted.[1]

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. By contrast, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke* v. *City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

In addition to the mandates of Rule 12(b)(6), Federal Rule of Civil Procedure 9(b) requires "all averments of fraud" to be "stated with particularity," although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." "The rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc.* v. *Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *see also*

---

[1] EKJ joined [#27] in the motion to dismiss filed by Jeffrey Pickus, James, Pickus, Joel Pickus, Theodore Pickus, Base 4, and Witucki [#25]. Edward I. Pickus, Allan M. Pickus, Nathan W. Pickus, Fossberg, EAN, and JMJ filed a separate motion to dismiss [#29].

*DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("Although states of mind may be pleaded generally [under Rule 9(b)], the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story.").

## JURISDICTION

Draper invokes this court's subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332(a). Pursuant to 28 U.S.C. § 1331, the court has federal question jurisdiction over Draper's RICO claim. Draper also raises state law claims for breach of contract and breach of fiduciary duty in counts I and II, respectively. The EAN defendants, Fossberg, and JMJ challenge this court's diversity jurisdiction over counts I and II pursuant to 28 U.S.C. § 1332(a).

The party seeking to invoke federal jurisdiction bears the burden of demonstrating that the jurisdictional requirements are met. *See Tylka* v. *Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000). To warrant diversity jurisdiction, the parties must be citizens of different states, and the amount in controversy must exceed $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). The first part of this requirement entails a finding that there is "complete" diversity, that is, that no defendant is a citizen of the same state as any plaintiff. *See Fidelity and Deposit Co.* v. *Sheboygan Falls*, 713 F.2d 1261, 1264 (7th Cir. 1983) (citing *Strawbridge* v. *Curtiss*, 7 U.S. 267, 2 L.Ed. 435 (1806)).

Draper's First Amended Complaint asserts that he is a Florida resident and defendants Edward I. Pickus, Allan M. Pickus, Nathan W. Pickus, Jeffrey Pickus, Joel Pickus, James Pickus, Theodore Pickus, Fossberg, and Witucki are "residents within the Northern District of Illinois." *See* First Amended Complaint at ¶¶ 1-2. Draper alleges that EAN, JMJ, and Base 4 are Illinois corporations. *See id.* at ¶ 2. Draper further alleges that EKJ "is a licensed public accounting firm

in Illinois that performed accounting services in the Northern District of Illinois," *id.* at ¶ 23, but does not specify EKJ's state of incorporation or principal place of business. Such allegations deem EAN, JMJ, and Base 4 Illinois citizens, *see* 28 U.S.C. 1332(c)(1) (corporation deemed citizen of state of incorporation and state of principal place of business). The allegations as to the individual defendants' residency and EKJ, however, are insufficient to establish diversity jurisdiction. *See Held v. Held*, 137 F.3d 998, 1000 (7th Cir. 1998) ("It is well-settled that "[w]hen the parties allege residence but not citizenship, the court must dismiss the suit.'") (quotation omitted). The court will not exercise its supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because, as discussed below, Draper has failed to state a RICO claim. Accordingly, the court dismisses counts I and II.

## ALLEGATIONS OF THE COMPLAINT[2]

### I. The Highwood Lakes Agreement

On February 28, 1991, Draper entered into the Highwood Lakes Venture General Partnership Agreement (the "Agreement") with EAN and Base 4. The Agreement established a partnership named the Highwood Lakes Venture in order "[t]o acquire, own, maintain, operate, sell, lease, develop, finance, dispose of and otherwise invest in and deal with the Property and to engage in any other activities related or incidental thereto." Exhibit A, the Agreement at § 4.1. The Agreement required that the partners make cash contributions to the capital of the partnership, *see* § 6.1, and granted apportioned shares in the partnership as follows: Draper received a 40% share, EAN received

---

[2] The facts in this section are taken from the First Amended Complaint, the Highwood Lakes Venture General Partnership Agreement (Exhibit A), and the 1998 Final Schedule K-1 (Exhibit B). Both exhibits were attached to the Complaint and referred to therein. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." *Witzke v. Femal*, 376 F.3d 744 at 749 (7th Cir. 2004), quoting Fed. R. Civ. P. 10(b). Therefore, the court may consider documents attached to the complaint in ruling on a motion to dismiss. *Id.*, citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

4

a 40% share, and Base 4 received a 20% share. *See* § 7.1. The partnership existed through the 1998 calendar year.³ *See* Exhibit B, 1998 Final Schedule K-1.

## II. Defendants' Alleged Improper Activities

Draper asserts that on numerous occasions during the course of the partnership, Edward I. Pickus, Allan M. Pickus, and Nathan W. Pickus, doing business as EAN ("EAN defendants"), and Jeffrey Pickus, Joel Pickus, James Pickus and Theodore Pickus, doing business as Base 4 ("Base 4 defendants"), breached their contractual obligations to Draper. Without the knowledge or consent of Draper, defendants made unauthorized, undisclosed periodic payments to North Shore Development and Construct Realty, entities under the ownership and control of defendants. From the inception of the partnership until its winding up, the Base 4 defendants caused an imbalance in the partnership equity accounts as a result of their failure to make capital contributions to the partnership. Additionally, the EAN defendants made a cash distribution of partnership funds in the amount of $99,000 to their sons, the Base 4 defendants, via their corporation, Base 4, while Base 4 maintained a negative balance in its partnership capital account.

EAN, the partner responsible for the books and records of the partnership, appointed Witucki, the son-in-law of Edward I. Pickus, to act as accountant for the partnership. Witucki did not provide Draper access to the books and records of the partnership. Neither EAN nor Witucki provided Draper with annual accounting statements for the partnership.

In May 2002, Draper, through his representative Ronald D. Kubacki, C.P.A. ("Kubacki"),

---

³Draper states in paragraph six of the First Amended Complaint that "[t]he partnership continued in existence through at least the 1998 calendar year . . ." and references the 1998 Final Schedule K-1 attached as Exhibit B. Draper has not alleged that the partnership engaged in any activities after 1998. In addition, the 1998 Final Schedule K-1 demonstrates on its face the finality of the partnership because the "Final K-1" option was selected and all partnership assets were shown as having been distributed.

attempted to gain access to the partnership records, but such attempts were denied. In May 2002, Kubacki contacted Witucki to request a review of partnership records. Witucki agreed to meet with Kubacki and provide him with the requested records but failed to appear on May 9, 2002 at the appointed place and time. Kubacki again spoke with Witucki on May 10, 2002. Witucki informed Kubacki during this conversation that "they" had reviewed the partnership agreement and were not going to turn over the records. Kubacki made four telephone calls to Witucki and left messages for him on June 12 and 13, 2002. Kubacki then made seven more telephone calls and ultimately arranged an appointment to meet with Witucki on July 10, 2002. Witucki informed Kubacki on July 10, 2002 that "the partnership ha[d] not maintained books, merely checking accounts," "that there was no need to as the activity did not warrant it," and that "the CPA firm accountants probably had work papers." First Amended Complaint at ¶ 47. Between November 25, 2003 and January 12, 2004, Kubacki made nine unsuccessful attempts to secure access to the partnership's books and records.

On September 17, 2004, Edward I. Pickus sent a letter dated September 17, 2002 to Draper demanding payment for his share of taxes arising from a partnership agreement entered into on November 3, 1990 in which EAN and La Salle Development Corporation agreed to fund any additional funding that was necessary.[4] This demand was made despite the fact that Draper did not

---

[4] For purposes of this motion to dismiss, the court considered on Draper's Exhibit C, which is the September 17, 2002 letter, because it was attached to the First Amended Complaint. *See, supra,* n.2. This exhibit, however, is of questionable relevance to Draper's claims. The agreement referenced in the September 17, 2002 letter is different than the Agreement giving rise to Draper's claims in the First Amended Complaint. La Salle Development Corporation was not a party to the Agreement in this case. Draper asserts in his response brief that it is impossible to separate the finances of defendants' partnership with Draper from those of defendants' partnerships with Draper's corporation, La Salle Development Corporation, because defendants intermingled and transferred assets between and among the various partnership accounts for years on end. Draper did not assert these allegations in the First Amended Complaint.

owe money to the partnership since Base 4 had maintained a negative balance in its partnership equity accounts.

On or about January 12, 2004, Kubacki was allowed to examine a limited portion of the partnership financial records. This examination revealed for the first time payments made to North Shore Development, Construct Realty, and Fossberg, in addition to payment of substantial management and consulting fees, without the knowledge or consent of Draper. In particular, North Shore Development had received monthly payments of approximately $4,000. In 1995, Construct Realty received approximately $24,000. Additionally, JMJ, a corporation under the control of the EAN defendants and/or Fossberg, had made profits during the course of the partnership and had distributed the profits to defendants. The EAN defendants had given Fossberg partial ownership in JMJ and diverted profits from the partnership by paying Fossberg a salary.

Defendants also employed EKJ to act as auditor and tax preparer for the partnership. EKJ never identified or disclosed to Draper the terms and nature of the relationship of the transactions between the partnership and North Shore Development, Construct Realty, and Fossberg. On March 5, 2003, March 6, 2003, and March 9, 2003, EKJ deposited Schedule K-1's containing partial information regarding the disposition of partnership assets in the mail.

## ANALYSIS

In count III of the First Amended Complaint, Draper purports to establish a violation of 18 U.S.C. § 1962(c) against the EAN defendants, the Base 4 defendants, Fossberg, Witucki, and EKJ.[5]

---

[5] 18 U.S.C. § 1962(c) makes it unlawful

for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

7

In order to allege a RICO violation, Draper must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016 at 1019 (7th Cir. 1992), quoting *Sedmia, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 at 496, 87 L. Ed. 2d 346, 105 S. Ct. 3275 (1985). A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. 18 U.S.C. § 1961(5). "Predicate acts are acts indictable under a specified list of criminal laws, 18 U.S.C. § 1961(1)(B), including mail fraud under 18 U.S.C. § 1341, and wire fraud under 18 U.S.C. § 1343." *Id.*

## I. Alleged Predicate Acts

Draper asserts predicate acts of mail fraud and wire fraud, which require that Draper establish that the defendants "(1) ha[ve] participated in a scheme to defraud, and (2) ha[ve] mailed or knowingly ha[ve] caused to be mailed a letter or other material for the purpose of executing the scheme." *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247 at 249-50 (7th Cir. 1995). The scheme on which Draper bases the predicate acts of mail fraud and wire fraud is a scheme to divert partnership assets from the partnership without Draper's knowledge or consent. Draper alleges that partnership assets were diverted fraudulently (1) by Edward I. Pickus, Allan M. Pickus, and Nathan W. Pickus to Fossberg by giving Fossberg partial ownership in JMJ and diverting profits from the partnership by paying Fossberg a salary (¶ 28); (2) to North Shore Development in monthly payments of approximately $4,000 (¶ 41); and (3) to Construct Realty in an approximate payment of $24,000 in 1995 (¶ 42). According to Draper, such fraud gave rise to the predicate acts of mail fraud and wire fraud, including "the mailing of inaccurate K-1's, a telephone conversation denying access to the records[,] and a letter demanding money while Base 4 maintained a negative balance in its equity account . . . ." Draper Response at 17.

In asserting a civil RICO claim with fraudulent conduct as its underlying basis, Draper must comply with the heightened pleading standards of Federal Rule of Civil Procedure 9(b) and describe with some specificity the underlying predicate acts. *Midwest Grinding*, 976 F.2d at 1020. The complaint must specify "the time, place, and content of the alleged false representations, the method by which the representations were communicated, and the identities of the parties to those misrepresentations." *Lachmund v. ADM Investor Servs.*, 191 F.3d 777 at 784 (7th Cir. 1999), citing *Midwest Grinding*, 976 F.2d at 1020; *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988 at 992-93 (7th Cir. 1991).

The First Amended Complaint identifies EKJ as the party using the mails in furtherance of defendants' fraudulent scheme to divert funds from the partnership by mailing inaccurate K-1's on March 5, 2003, March 6, 2003, and March 9, 2003. *See* First Amended Complaint at ¶ 50. Witucki is identified as the individual who denied Kubacki access to the partnership records on May 10, 2002 and with whom Kubacki spoke on July 10, 2002 in a conversation in which Witucki stated that the partnership had not maintained books because the activity did not warrant it and that the CPA firm accountants probably had work papers. *Id.* at ¶ 47. Edward I. Pickus sent the September 17, 2002 letter to Draper demanding money for the partnership even though Base 4 had maintained a negative balance in its partnership equity account. *Id.* at ¶ 51.

While such allegations describe with sufficient particularity the time and place of the alleged communications perpetrating the fraud, Draper has not identified any misrepresentations in the content of the such communications. Draper has not alleged facts showing that the September 17, 2002 letter related to the alleged scheme to divert partnership funds from his partnership with EAN and Base 4, particularly because the reasonable inference from the alleged facts is that the

partnership no longer existed, as evidenced by the Final Schedule K-1 for 1998.

Similarly, Draper alleges generally that the March 2003 K-1's were inaccurate but does not allege any facts showing what statements contained in the K-1's were inaccurate. To the extent that the 2003 K-1's relate to the diversion of partnership assets, Draper does not identify when the alleged diversion to Fossberg occurred, who among the defendants diverted the funds or when such assets were diverted to North Shore Development, or who diverted the funds to Construct Realty. Thus, the court cannot determine what information, if any, in the 2003 K-1's was misrepresented. Moreover, Draper attributes certain statements to Witucki in a conversation that presumably occurred over the telephone but does not offer any allegations showing that such statements were misrepresentations. In addition, Draper does not attribute any predicate acts to Allan M. Pickus, Nathan W. Pickus, Jeffrey Pickus, James Pickus, Joel Pickus, Theodore Pickus, or Fossberg. Nor does he allege any facts sufficient to "notify [these] defendants of their purported role in the scheme . . . ." *Midwest Grinding*, 976 F.2d at 1020.

Nevertheless, Draper's failure to identify actual misrepresentations in the letter, 2003 K-1's, or the telephone conversation is not fatal to his RICO claim. *See United States v. Wellman*, 830 F.2d 1453 at 1461 (7th Cir. 1987) (mailings need not be fraudulent; "[i]t is enough that the mails are used in the course of the [fraudulent] scheme as an expected by-product of it."). Assuming for the sake of argument that Draper sufficiently established the involvement of each defendant in and the existence of a scheme to defraud the partnership by diverting partnership funds without the knowledge or consent of Draper, Draper must allege sufficient facts to demonstrate that the defendants mailed or knowingly caused to be mailed a letter or other material for the purpose of executing the scheme. *Richards*, 55 F.3d at 250. Here, Draper's RICO claim falters.

Draper's RICO claim is grounded in the partnership formed with EAN and Base 4 in 1991 pursuant to the Agreement. With the exception of the telephone call in which Witucki denied Kubacki access to the partnership's books, Draper has not alleged any connection between the defendants' use of the mail or wires and the furtherance of the scheme to defraud that partnership. The defendants' use of the mail related to a different partnership agreement. Draper has not included allegations in the First Amended Complaint that connect the partnerships and, hence, that connect the scheme to defraud. In addition, the telephone conversation is alleged to have occurred in 2002. Draper has not alleged how the telephone conversation furthered the alleged scheme, much less was "incident to an essential part of the scheme," *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321 at 1330 (7th Cir. 1994), to defraud the partnership when the partnership had ended approximately four years earlier. In light of these deficiencies, Draper has failed to plead sufficiently the predicate acts of mail fraud and wire fraud.

## II. Pattern of Racketeering Activity[6]

Even if Draper had alleged sufficiently the predicate acts of mail fraud and wire fraud, the court would be obliged to dismiss his RICO claim because he has not alleged a pattern of racketeering activity. In order to allege a pattern, Draper must allege multiple related predicate acts that "amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 238-39, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989). The court assumes that the alleged acts of mail fraud and wire fraud related to each other. Thus, the court must consider

---

[6]The court notes that Draper does not cite a single case in response to defendants' arguments concerning Draper's RICO claim and thus provides no legal analysis of his RICO claim. *See 330 West Hubbard Restaurant Corp. v. United States*, 203 F.3d 990, 997 (7th Cir. 2000) ("A party's failure to address or develop a claim in its opening brief constitutes a waiver of that claim, for it is not the obligation of this court to research and construct the legal arguments open to the parties, especially when they are represented by counsel. . . . In order to develop a legal argument effectively, the facts at issue must be bolstered by relevant legal authority; a perfunctory and undeveloped assertion is inadequate to raise a separate basis for appeal.") (internal citations and quotations omitted).

whether such predicate acts established continuity, that is whether they amount to or pose a threat of continued criminal activity.

Two types of continuity exist: closed-ended and open-ended. *Id.* at 241. Closed-ended continuity refers "to a closed period of repeated conduct," while open-ended continuity refers to past conduct that "projects into the future with a threat of repetition." *Id.* In this case, the predicate acts of mail fraud and wire fraud have not established open-ended continuity since the partnership at issue has ceased to exist and Draper has not alleged any future threat of repetition. To determine whether closed-ended continuity exists, the court must consider: (1) the length of time over which the predicate act occurred; (2) the variety of predicate acts; and (3) the number of predicate acts, victims, schemes, and distinct injuries. *Jones v. Lampe*, 845 F.2d 755, 757 (7th Cir. 1988); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986).

The Seventh Circuit has identified the first factor, duration, as being "perhaps the closest thing we have to a bright-line continuity test . . . ." *Midwest Grinding*, 976 F.2d at 1024. This is because the duration of the predicate acts must "extend over a substantial period of time; a few weeks or months is considered insubstantial." *Id.*, quoting *H.J., Inc.*, 492 U.S. at 242 (internal quotations omitted). Draper identifies the first predicate act as the telephone conversation between Witucki and Kubacki in which Witucki denied Kubacki access to the partnership records. The conversation occurred on May 10, 2002 and was followed by another telephone conversation between the same individuals on July 10, 2002. On September 17, 2002, Edward I. Pickus mailed the certified letter demanding payment from Draper. The final predicate acts were EKJ's use of the mail in sending incomplete K-1's to Draper on March 5, 6, and 9, 2003. Thus, the predicate acts extended over a period of approximately 10 months. This short duration of predicate acts, in itself,

may be insufficient to establish continuity. *See Vicom*, 20 F.3d at 780 (nine months likely does not satisfy the duration requirement).

The remaining factors also do not support a finding of closed-ended continuity. First, the alleged predicate acts consist only of mail fraud and wire fraud. The Seventh Circuit disfavors relying on mail fraud or wire fraud predicate acts to form a pattern. *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir. 1990). Second, while Draper has alleged six predicate acts, "the number of offenses is only tangentially related to the underlying fraud . . . ." *Pizzo v. Bekin Van Lines*, 258 F.3d 629 at 633 (7th Cir. 2001). Finally, Draper has alleged only one victim, himself; he has alleged a single scheme to divert partnership assets; and he has alleged only one injury, an economic injury. Draper argues, without citing to any authority, that he suffered repeated economic injuries each time defendants diverted partnership assets. This argument has been rejected on numerous occasions. *See Vicom*, 20 F.3d at 782 ("Identical economic injuries suffered over the course of two years stemming from a single contract were not the type of injuries which Congress intended to compensate via the civil provisions of RICO."). *See also, Flextronics Int'l P.A., Inc. v. Copas*, 327 F. Supp. 2d 934, 937 n.3 (N.D. Ill. 2004) (rejecting argument that each below-market sale of plaintiff's property caused a distinct injury). Weighing all of these factors, Draper has failed to establish a "pattern of racketeering activity." Thus, defendants' motion to dismiss count III is granted.[7]

---

[7]The court does not address defendants' other arguments since the failure to plead sufficiently predicate acts and a pattern of racketeering activity is dispositive.

13

## ORDER

For the reasons stated above, defendants' motions to dismiss [#25, 29] are granted without prejudice. Plaintiff may file an amended complaint within twenty-eight days (July 27, 2005).

ENTER: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge.

Dated: June 29, 2005