UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Lewis F. DRAPER, a citizen and resident of the State of Florida,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Edward I. PICKUS, a citizen and resident of the State of Illinois, Allan M. PICKUS, a citizen and resident of the State of Illinois, Nathan W. PICKUS, a citizen and resident of the State of Illinois, Jeffrey PICKUS, a citizen and resident of the State of Illinois, James PICKUS, a citizen and resident of the State of Illinois, Joel PICKUS, a citizen and resident of the State of Illinois, and Theodore PICKUS, a citizen and resident of the State of Illinois, each individually and doing business as EAN Corporation, an Illinois corporation and/or Base 4, Inc., an Illinois corporation, and Evoy, Kamschulte, Jacobs and Co., LLP, an Illinois public accounting firm formerly doing business as Evoy, Kamschulte, Jacobs & Co.,<br><br>　　　　Defendants. | No. 04 C 8150<br><br>Judge Joan H. Lefkow<br><br>Magistrate Judge Nan R. Nolan |

## **MEMORANDUM OPINION AND ORDER**

This is the fourth attempt by plaintiff Lewis F. Draper ("Draper") to plead his breach of fiduciary duty claims against defendants Edward I. Pickus ("Edward"), Allan M. Pickus ("Allan"), and Nathan W. Pickus ("Nathan"), individually and doing business as EAN Corporation ("EAN"); Jeffrey Pickus ("Jeffrey"), James Pickus ("James"), Joel Pickus ("Joel"), and Theodore Pickus ("Theodore"), individually and doing business as Base 4, Inc. ("Base 4"); and the accounting firm of Evoy, Kamschulte, Jacobs & Co., LLP ("EKJ") (collectively,

"defendants"). Draper's original complaint was filed on December 17, 2004. The court dismissed Draper's first amended complaint, which alleged state law claims for breach of contract and breach of fiduciary duty as well as a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et. seq*, on June 29, 2005. Mem. Op. and Order, Dkt. No. 43 (June 29, 2005). Draper's second amended complaint, alleging breach of contract and breach of fiduciary duty based on an underlying fraud, was dismissed on March 9, 2006. Minute Order, Dkt. No. 58 (March 9, 2006). The court warned Draper that he would have only one final attempt to file an amended complaint. *Id*.

Draper's third amended complaint (the "Complaint") has only one count: breach of fiduciary duty against all of the defendants. He asks for compensatory and punitive damages, interest, attorney's fees, and costs. The court has jurisdiction under 28 U.S.C. § 1332 because Draper is a citizen of Florida, all defendants are citizens of Illinois or Illinois companies, and the amount in controversy exceeds $75,000.00. Defendants have again moved to dismiss. Dkt. No. 60 (April 26, 2006); Dkt. No. 62 (April 26, 2006); Dkt. No. 65 (May 2, 2006). For the following reasons, their motions are granted and this case is dismissed with prejudice.[1]

I.  **Motion to Dismiss Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the complaint for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss, the court accepts all well-pleaded facts alleged in the complaint as true, and draws all

---

[1] John Fossberg, Robert A. Witucki and JMJ Construction Co., defendants who were dismissed by the court's previous orders, are not named as defendants in Draper's current complaint. Therefore, the court will treat their previous dismissals as being with prejudice.

reasonable inferences from those facts in the plaintiff's favor. *McMillan* v. *Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006).[2] The court is not required, however, to "ignore any facts set forth in the complaint that undermine the plaintiff's claim [nor does it] assign any weight to unsupported conclusions of law." *LeBlang Motors, Ltd.* v. *Subaru of Am., Inc.*, 148 F.3d 680, 690 (7th Cir. 1998) (internal citations and quotations omitted); *Kolupa* v. *Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006); *Lekas* v. *Briley*, 405 F.3d 602, 613-14 (7th Cir. 2005). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); *McCready* v. *eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

**II.    Facts**

Draper, EAN, and Base 4 entered into the Highwood Lakes Venture General Partnership Agreement ("the Agreement") in February of 1991.[3] Complaint, at ¶ 3. The purpose of the Partnership was to "acquire, own, maintain, operate, sell, lease, develop, finance, dispose of and otherwise invest in" a property known as Highwood Lakes Estates. Complaint, at ¶ 4; Complaint, Ex. A, at ¶ 2.13. At the time, Draper was a land developer, who located and identified parcels of real estate suitable for development in northern Illinois and then arranged for

---

[2] "When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court focuses on the complaint, but may also take into account matters of public record, orders and items appearing in the record of the case." *Harris Custom Builders, Inc.* v. *Hoffmeyer*, 834 F. Supp. 256, 261 (N.D. Ill. 1993) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil 2d § 1357 (citing cases)).

[3] The individual defendants are not signatories to the Agreement and are not named as partners in the Partnership.

3

financing, zoning, sewer, set aside and annexation agreements. Complaint, at ¶ 1. Edward, Allan, and Nathan did business as EAN, and their sons, Jeffrey, Joel, James, and Theodore, did business as Base 4. Complaint, at ¶ 3.[4] EAN and Base 4 signed the Agreement using an address for Pickus Construction. Complaint, Ex. A. EKJ was a public accounting firm engaged by EAN to work for the Partnership. Complaint, at ¶ 19.

The net income and loss were to be allocated among the partners as follows: 40% to Draper, 40% to EAN, and 20% to Base 4. Complaint, Ex. A, at ¶ 7.1. The Agreement provided that the partners would be equals. Complaint, Ex. A, at ¶ 9.5.[5] Regarding accounting books and reports, the Agreement said the following:

> Accurate books and accounts shall be kept by the Partnership showing all of its assets, liabilities, operations, transactions and financial condition. As soon as practicable after the end of each Fiscal Year, accounting statements shall be prepared with respect to the assets, properties, liabilities and net worth of the Partnership, its transactions and operations during the preceding Fiscal Year, and all other matters and items customarily included in such statements, and complete copies of such statements shall be furnished to all Partners. All Partners shall have the right and power to examine and inspect in person or by agent, at reasonable times, the books, records, and accounts of the Partnership, at the principal place of business of the Partnership [a location that was also the principal place of business of EAN and an office of Base 4].

Complaint, Ex. A, at ¶ 8.1.

---

[4] Edward, Allen, Nathan, and EAN are sometimes referred to as "the EAN defendants" in this opinion. Jeffrey, James, Joel, Theodore, and Base 4 are sometimes referred to as "the Base 4 defendants."

[5] The Agreement said, "Except as otherwise provided herein, the functions, authority, powers, elections, decisions, rights and duties provided to be exercised by and residing in and imposed upon the Partners to conduct and manage the affairs of the Partnership shall be executed jointly and unanimously by the Partnership and, except as otherwise expressly provided in this Agreement, no Partner shall have any control over Partnership business to the exclusion of other Partners. Complaint, Ex. A, at ¶ 9.5.

Finally, the Agreement included a provision for dissolution: "The Partnership shall be dissolved upon the happening of any one of the following events: The disposition of the Partnership of all of its assets and the cessation by it of all business...." Complaint, at ¶ 11.1. The Partnership existed through the 1998 calendar year. Draper has not alleged that it engaged in any activities after 1998.[6] According to the Final K-1 tax form for 1998 filed on behalf of the Partnership,[7] Draper's capital account had $20,241.00 in it at the beginning of 1998. EAN's Reply, Ex. 2. Over the course of the year, it earned $35.00 in interest and the total amount of $20,276.00 was withdrawn, leaving a balance of $0 at the end of the year. EAN's Reply, Ex. 2.

Draper alleges that EAN, Base 4, and the individual defendants directed, authorized, knew of and/or received the following transfers of Partnership funds and assets without his knowledge and to the detriment of the Partnership:

- In 1991, Base 4 failed to make its capital contribution, causing an imbalance in the Partnership equity accounts from 1991 to the present. Complaint, at ¶ 14.
- In 1991, the Partnership sold parcels of land for a total of $3,025,000.00, but failed to account to Draper for his share of the proceeds in the amount of $1,210,000.00. Complaint, at ¶ 15.
- Between 1991 and 1994, the EAN defendants deeded title to four parcels of Partnership-owned land to Jeffrey, James, Joel, and Theodore, who gave no consideration in exchange and used the parcels for their own personal enjoyment. Complaint, at ¶ 16.
- In 1994, the EAN defendants made a cash distribution to the Base 4 defendants in the amount of $89,069.00. Complaint, at ¶ 17.

---

[6] In response to the defendants' assertions that it did not engage in any activities after 1998, Draper declines to say that it did, and instead says "Nothing in the record suggests the Partnership has been dissolved, [and] the Partnership may continue to own property ..." Draper's Response, at 12. While parties' statements in their pleadings are not evidence, they can have the effect of removing a fact from contention. *Clark* v. *Robert W. Baird Co., Inc.,* 152 F. Supp. 2d 1040, 1045 n.2 (N.D. Ill. 2001).

[7] Because Draper attached this document to a previous complaint in which he admitted that he received it, First Am. Complaint, at ¶ 6, it can be considered on this motion to dismiss. *Harris Custom Builders,* 834 F. Supp. at 261.

- Defendants made the following transfers of money out of Draper's capital account without his knowledge or consent: $52,800.00 in 1996; $26,800.00 in 1997; and $20,276.00 in 1998. Complaint, at ¶ 18.

Draper alleges that he was not aware of these alleged breaches until 2004. Complaint, at ¶¶ 11-13, 20-25. EAN had sole custody of the books and records of the Partnership and sole control of the Partnership's accounts, and Base 4 had access to the records. Complaint, at ¶¶ 8, 10, 19. Draper has alleged that he was not provided with the annual accounting statements for the Partnership. Second Amended Complaint, at ¶ 24 (defendants "failed to furnish [Draper] with annual accounting statements, Partnership records, complete partnership tax returns and or make same available to [Draper] or his agents for inspection and review."). Draper and his representatives began making attempts to access Partnership records in May 2002. Complaint, at ¶ 12. They were denied until January 12, 2004, when Draper's representative, Ronald Kubacki, was allowed access to a portion of the financial records for a brief period of time. *Id*.

The allegations of EKJ's breach of fiduciary duty are that it failed to disclose the terms of the above transactions to Draper. Complaint, at ¶¶ 19-25. In addition, EKJ failed to properly allocate interest on partners' debts to the Partnership, and it failed to provide Draper with complete copies of all Partnership tax returns or opportunity to inspect the records supporting such tax returns. *Id*.

### III. Claims against the EAN and BASE 4 Defendants

Draper complains that "[b]ecause of EAN's having assumed responsibility for the books, records, and management of the Partnership and because of a pre-existing, long-standing business relationship among the parties, [Draper] was entitled to and did place his trust in EAN

6

and its principals to be forthright with regard to the Partnership's records, to act fairly and honestly and not to deal secretly behind his back in managing the Partnership. [Draper] had no knowledge or reason to believe that his long-standing business partners were secretly enriching themselves at his expense by depleting Partnership assets." Complaint, at ¶ 11.

The statute of limitations for a breach of fiduciary duty claim is five years. 735 Ill. Comp. Stat. 5/13-205 (West 2007) ("... all civil actions not otherwise provided for[] shall be commenced within 5 years next after the cause of action accrued."); *Fuller Family Holdings, LLC* v. *N. Trust Co.*, – N.E.2d –, 2007 WL 465641, at *10 (Ill. App. Ct. 1st Div. Feb. 13, 2007). Illinois applies its "discovery rule" to the statute of limitations for breach of fiduciary duty claims, whereby "the cause of action accrues and the limitations period commences when the plaintiff knew *or reasonably should have known*[8] of the injury and that it was wrongfully caused." *Id*. (citations omitted and emphasis added); *McWane, Inc.* v. *Crow Chicago Indus., Inc.*, 224 F.3d 582, 585 (7th Cir. 2000) (citation omitted) ("the [limitations] period begins when the injury could have been discovered through the exercise of appropriate diligence ..."); *Walker* v. *N. Trust Co.*, 2007 WL 178392, at *9 (N.D. Ill. Jan. 18, 2007). "This is the point where the injured party possesses information sufficient to put a reasonable person on inquiry to determine whether actionable

---

[8] Draper incorrectly states that in breach of fiduciary duty cases "the statute of limitations will not begin to run until the plaintiff actually discovers his fiduciary's wrongdoing." Draper's Response, at 6. Worse, he quotes a statement made in *Peskin* v. *Deutsch*, 479 N.E.2d 1034, 1039, 134 Ill. App. 3d 48, 55, 89 Ill. Dec. 28 (Ill. App. Ct. 1st Dist. 1985), "in cases involving a fiduciary relationship, the statute of limitations will not begin to run nor laches apply until the fraud is discovered ...[,]" but inappropriately omits the relevant continuation of the quotation: "*or until such time as it could have been discovered* by the exercise of reasonable diligence." *Id*. (emphasis added). Draper is hereby reminded of his Rule 11 obligations regarding his representations to this court. In fairness, EKJ is also reminded to take care in the preparation of its citations, as noted in Draper's Response Brief. Draper's Response, at 10 n.2.

7

conduct is involved." *Melko* v. *Dionisio*, 580 N.E.2d 586, 591, 219 Ill. App. 3d 1048, 162 Ill. Dec. 623, 628 (Ill. App. Ct. 2nd Dist. 1991). For purposes of the discovery rule, it is not necessary that a plaintiff know the full extent of his injury, but only enough to put him on notice of the need to investigate further. *McWane,* 224 F.3d at 585; *Clark* v. *Robert W. Baird Co., Inc.,* 152 F. Supp. 2d 1040, 1045 (N.D. Ill. 2001) (citing *Clay* v. *Kuhl*, 727 N.E.2d 217, 222, 189 Ill. 2d 603, 244 Ill. Dec. 918 (Ill. 2000)).

The running of the statute of limitations is an affirmative defense, and as such plaintiffs are not required to negate it in their complaints. *Clark* v. *City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003). The issue of when a plaintiff knew or should have known that he has been injured is generally a question of fact. *Fuller*, 2007 WL 465641, at *10; *Walker*, 2007 WL 178392, at *8. A plaintiff can plead himself out of court, however, when he alleges facts that affirmatively show that his suit is time barred. *Clark*, 318 F.3d at 767; *Walker,* 2007 WL 178392, at *8.

Illinois's fraudulent concealment statute, which is distinct from the common law discovery rule, *Melko,* 580 N.E.2d 591, can also save an otherwise untimely complaint from dismissal: "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 Ill. Comp. Stat. 5/13-215 (West 2007). In contrast to the discovery rule, a plaintiff may not rely on the fraudulent concealment statute without alleging facts supporting it in his complaint. *Beauchem* v. *Rockford Products Corp*. 2004 WL 432328, at *1 (N.D. Ill. Feb. 6, 2004) (holding that fraudulent concealment must be pled with particularity

under Federal Rule of Civil Procedure 9(b));  *Hagney* v. *Lopeman*, 590 N.E.2d 466, 464, 147 Ill.2d 458, 469, 168 Ill. Dec. 829 (Ill. 1992).

For fraudulent concealment in the context of fiduciary relationship, "where a fiduciary has a duty to disclose certain facts to the plaintiff but fails to do so, the plaintiff's failure to use diligence to ascertain those facts is excused, and the statute of limitations begins to run when the plaintiff actually discovers the fraud." *Melko,* 580 N.E.2d at 593.  The plaintiff must show that the relevant facts were in fact concealed, however.  *Id*. at 593-94.  And "although the existence of a fiduciary relationship may excuse a plaintiff's failure to investigate diligently to ascertain facts that would put her on notice of a possible injury, there is plainly a difference between the failure to *ascertain* facts through diligent inquiry and the failure to *act upon* facts of which the plaintiff *already* has actual knowledge." *Id*. (emphasis in original).

According to Draper's complaint, the last improper transfer of Partnership assets occurred sometime in 1998 when the defendants transferred $20,276.00 out of his capital account.  Complaint, at ¶ 18.  This transaction was shown in the Final K-1 prepared by EKJ for the Partnership.  Draper admitted that he did receive this Final K-1 and he attached it as an exhibit to his First Amended Complaint.  First Am. Complaint, at ¶ 6.  He has never said *when* he received the K-1, however.  In response to defendants' assertion that he received it in 1998, Draper proclaims that they are "[d]efying the laws of space, time, and matter," and that he could not possibly have received it before 1999.  Draper's Response, at 9.  In the absence of any disclosure by Draper in his pleadings of when he actually did receive the K-1 and any dispute that he received it in 1999, the reasonable inference for the court to make is that he did receive it in 1999 and filed it with his personal taxes by the 15th of April, 1999, as required.  Even if he had

9

requested the automatic six month extension of the deadline for filing his personal taxes, Draper would still have been required to file them by October 15, 1999,[9] and the court must infer that he was in receipt of the K-1 by that time.

The Final K-1 reported that at the beginning of 1998, Draper's capital account had $20,241.00 in it, and that during the year that entire amount (plus the interest earned during the year) was withdrawn, leaving a balance of $0. EAN's Reply, Ex. 2. The receipt of this document gave Draper clear notice that $20,276.00 had been transferred out of his capital account by the defendants, and furthermore that any other money that had previously been in his account had also been withdrawn. Draper knew at that time whether the transfers were made with his permission.

If the statute of limitations had not already been running, the receipt of the K-1 certainly triggered it. The limitations period was up five years from October 15, 1999, so Draper's filing of his first complaint on December 17, 2004 was too late. Draper's allegation that the defendants did not allow him to access the books and records of the Partnership to investigate the full extent of his injuries does not affect this result. *McWane,* 224 F.3d at 585; *Clark* v. *Robert W. Baird Co., Inc.,* 152 F. Supp. 2d at 1045 (citation omitted) ("It does not matter that the [account] statements [that the plaintiff received] do not list all of the transactions disputed in this case; he need not have known the full extent of his injury.").

---

[9] 28 U.S.C. § 6081 provides that "The Secretary may grant a reasonable extension of time for filing any return, declaration, statement, or other document required by this title or by regulations. Except in the case of taxpayers who are abroad, no such extension shall be for more than 6 months." It has not been recently amended in any way relevant to this discussion.

This result is consistent with the caselaw. Where it is undisputed that a plaintiff had some evidence of an injury more than five years before bringing suit, and a reasonable person in the plaintiff's position would have inquired into the possibility that the defendants had engaged in actionable conduct, courts do not excuse the tardiness of the complaint. For example, the plaintiff in *Clark* v. *Robert W. Baird Co., Inc.*, 152 F. Supp. 2d 1040, 1042-43 (N.D. Ill. 2001), invested $500,000 with the defendant, a brokerage company. He alleged that the defendant breached its fiduciary duty when it allowed one of its brokers to completely empty his account. *Id*. The defendant sent a statement to the plaintiff more than five years before the plaintiff filed suit showing that at least one unauthorized check for $15,000 had been issued from his account. *Id*. at 1045. In determining that the fraudulent concealment statute did not apply, the Court said that "a reasonable person would have noticed an unauthorized check for $15,000 ... [m]oreover, a reasonable person would have noticed that an account into which half a million dollars had been deposited had a balance of only $124.81." *Id*. at 1045. The Court noted that it did not matter that the plaintiff allegedly did not have notice of all of the transactions disputed in his case, because he need not have known the full extent of his injury for the statute of limitations to begin to run. *Id*. (citing *Clay*, 727 N.E.2d at 222).

Similarly, in *Eckmann* v. *Diedrich*, 2002 WL 1433736, at *1 (N.D. Ill. July 2, 2002), the plaintiff alleged a breach of fiduciary duty on the part of the attorney that represented her in achieving a settlement. According to the settlement document that plaintiff signed, she was to receive, *inter alia,* $250,000 as a lump sum in 1986 and seven annual payments of $66,000. *Id*. The court held that neither the discovery rule nor the fraudulent concealment statute allowed the plaintiff to bring a fiduciary duty claim in 2000 based on the defendant's alleged withholding of

$220,000 of the $250,000 lump sum and one third of each $66,000 installment. *Id*. at *1-*2. The receipt of those lesser sums was itself sufficient notice that she was being injured, causing her claim to accrue and the limitations period to run despite her allegations that she did not discover the defendants' wrongdoing until an investigation in 1999. *Id*.

In contrast, where the courts have applied the discovery rule or the fraudulent concealment statute to allow a plaintiff's otherwise tardy complaint, there has been no undisputed evidence that the plaintiff knew or should have known that he was injured at all more than five years before bringing suit. In *Fuller Family Holdings, LLC* v. *N. Trust Co.*, – N.E.2d –, 2007 WL 454641, at *1 (Ill. App. Ct. 1st Dist. Feb. 13, 2007), plaintiffs were beneficiaries of a trust that held title to a parcel of land. They brought claims against the former trustee alleging that it had failed to exercise the trust's rights in transactions involving the property. *Id*. at *5. Defendants argued that the plaintiffs' 2004 complaint was time barred because the plaintiffs admittedly had copies in 1993 of some of the documents relevant to the transactions that they challenged. *Id*. at *10. The court disagreed because there were no allegations that plaintiffs received or were otherwise aware of the contents of the specific document creating the rights that the defendants allegedly failed to enforce until February of 2004. *Id*. at *10. Therefore, the court denied the defendants' motion to dismiss on the statute of limitations ground because it could not say as a matter of law that the plaintiffs knew or should have known of their right to bring a fiduciary duty claim more than five years before they filed their complaint. *Id*. at *11.

Finally, in *Walker* v. *N. Trust Co.*, 2007 WL 178392, at *1, the plaintiff alleged that the trustee and its advisory committee of a trust created for her benefit failed to act in her best interests, defrauded her into signing a document that harmed her interests and concealed the

effect of the document from her, and conspired to misuse trust assets, among other wrongs. The plaintiff complained "of actions taken as early as 1985 and of a continuing conspiracy to prevent her from learning of her rights under the Trust Agreement and of the status of the Trust assets." *Id*. at *9. She alleged that she was prevented from discovering the breach of fiduciary duty due to the trustee and the advisory committee's failure to respond to her inquiries and the advisory committee's action in sending a trust document to her father instead of to her. *Id*. The court noted the "difficult nature of proving the inability to discover the truth of the alleged deception given the substantial passage of time affording an opportunity to do so," but found the applicability of the discovery rule to be an issue of fact and denied the motion to dismiss. *Id*.[10] [11]

## IV. Claim against EKJ

Draper's claims against defendant EKJ, a partnership registered pursuant to the Illinois Public Accounting Act, are subject to a two year limit as well as a five year statute of repose

---

[10] *See also LID Associates* v. *Dolan*, 756 N.E.2d 866, 324 Ill. App. 3d 1047 (Ill. App. Ct. 1st Dist. 2001); *White* v. *Kenneth Warren & Son, Ltd.*, 2000 WL 91920 (N.D. Ill. Jan. 14, 2000). *Peskin* v. *Deutsch*, 479 N.E.2d 1034, 134 Ill. App. 3d 48, 89 Ill. Dec. 28 (Ill. App. Ct. 1st Dist. 1985), cited by Draper, is not on point because it discusses laches instead of the statute of limitations. *Beerman* v. *Graff*, 621 N.E.2d 173, 250 Ill. App. 3d 632, 190 Ill. Dec. 304 (Ill. App. Ct. 1st Dist. 1993) is similarly not on point.

[11] The EAN and Base 4 Defendants alternatively argue that what Draper is actually seeking is an accounting of partnership affairs, which accrued upon dissolution of the partnership in 1998, 805 Ill. Comp. Stat. 205/43 (West 2007), and is therefore also barred by the five year statute of limitations. Additionally, they argue that Draper has failed to state a claim upon which relief may be granted under Rule 12(b)(6) and that he has not complied with his obligation to plead fraud with particularity under Rule 9(b). Because the court has resolved the case on other grounds, there is no need to address these arguments. There is also no need to address the individual defendants' argument that Draper has failed to plead the elements required to pierce the corporate veils of EAN and Base 4.

under 735 Ill. Comp. Stat. 5/13-214.2(a)-(b) (West 2007). As has been discussed above, EKJ prepared the Final K-1 for the Partnership by October 15, 1999 at the latest. Draper does not allege that EKJ performed any work for the Partnership after the K-1 was completed. In response to EKJ's assertion that it did not, Draper again specifically declines to make any positive assertions to the contrary.[12] Therefore, even drawing all reasonable inferences in Draper's favor, he had until October 15, 2001 to file his claims against EKJ, but did not do so until December 17, 2004. While the parties and the cases are unclear regarding the applicability of fraudulent concealment to the statute of repose, there are in any event no specific allegations in the complaint that would show that EKJ fraudulently concealed any breach of fiduciary duty from Draper between 1999 and 2001. Therefore, Draper's claim against EKJ is also barred.

## V. Order

For the foregoing reasons, defendants' motions to dismiss [#60, #62, #65] are granted. This case is dismissed with prejudice and terminated.

Dated: March 15, 2007                      ENTER: *Joan N. Lefkow*
                                                                   JOAN HUMPHREY LEFKOW
                                                                      United States District Judge

---

[12] Draper says "EKJ must have done work for the Partnership as late as 1999 because the K-1 would not have been prepared by then.... Furthermore, there is no reason to believe the 1998 K-1 was the last service performed for the Partnership by EKJ." Draper's Response, at 11 n.3 - 12. On the contrary, there are at least two reasons to believe that EKJ's last service for the Partnership was the preparation of the K-1: there are no allegations that the Partnership did any business after 1998, and the K-1 demonstrates the finality of the Partnership on its face because the "Final K-1" option was selected and all of Draper's share of the Partnership assets were shown as having been distributed. Mem. Op. and Order of June 29, 2005, at 5 n.3.